UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 18-1921 JGB (SPx)** | Date | March 3, 2022 |
|---|---|---|---|
| Title | *Ealeen Wilk v. Skechers U.S.A., Inc., et al.* | | |

Present: The Honorable    JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:     Order (1) GRANTING Plaintiffs' Motion for Final Approval of Class
Action Settlement (Dkt. No. 81); and GRANTING Plaintiffs' Motion for
Attorneys' Fees (Dkt. No. 79)**

Before the Court is Plaintiffs Dorian Gomez and Ealeen Wilk's ("Plaintiffs") unopposed
motion for final approval of class action settlement ("Motion," Dkt. No. 81) and motion for
attorney's fees ("MFA," Dkt. No. 79).  The Court held a final approval hearing on February 28,
2022.  Upon consideration of the papers filed in support of the Motion, as well as oral argument,
the Court GRANTS the Motion and GRANTS the MFA.

## I.   BACKGROUND

On September 10, 2018, Plaintiffs Dorian Gomez and Ealeen Wilk filed a complaint
against Defendant Skechers U.S.A., Inc. and Does 1–100 on behalf of themselves and a putative
class.  ("Complaint," Dkt. No. 1.)

On June 26, 2020, Plaintiffs filed a first amended complaint.  ("FAC," Dkt. No. 45.)
The FAC alleges four causes of action: (1) Failure to Properly Calculate and Pay Overtime; (2)
Failure to Pay All Wages Due at End of Employment; (3) Violation of California Business and
Professions Code § 17200; and (4) violation of the Private Attorneys General Act ("PAGA").
(Id.)

On July 6, 2020, Plaintiffs filed an unopposed motion for preliminary approval of class
action settlement.  ("First Motion for Preliminary Approval," Dkt. No 48.)  On September 1,

2020, the Court granted the motion. ("Order," Dkt. No. 57.) A few weeks before the Final Approval Hearing, the parties notified the Court of a development in the projected class size during discovery. (Dkt. No. 59.) The Court ordered the parties to withdraw their prior motion and file a revised version. (Dkt. No. 68.)

On November 1, 2020, Plaintiffs filed the unopposed revised motion for preliminary approval of class action settlement. (Dkt. No. 70.) The Court granted the motion on December 14, 2021. ("Preliminary Approval Order," Dkt. No. 78.)

On January 24, 2022, Plaintiffs filed an unopposed motion for attorneys' fees, costs, and incentive award, unaccompanied by the requisite final approval motion. ("MFA," Dkt. No. 79.) In support of the MFA, Plaintiff attached the following documents:

- Declaration of Zorik Mooradian, ("Mooradian MFA Decl.," Dkt. No. 79-2);
- Declaration of Eileen Wilk, ("Wilk MFA Decl.," Dkt. No. 79-3);
- Declaration of Dorian Gomez, ("Gomez MFA Decl.," Dkt. No. 79-4);
- Declaration of Atticus Administration, LLC, ("Atticus MFA Decl.," Dkt. No. 79-5);
- Notice of Class Action Settlement, ("Notice," Dkt. No. 79-6);
- Declaration of Robert J. Wasserman, ("Wasserman MFA Decl.," Dkt. No. 79-7);
- Revised Settlement Agreement, ("Agreement," Dkt. No 79-X); and
- Class Counsel Billing Records, ("Billing Records," Dkt. No. 79-X)

On January 31, 2022, Plaintiffs filed the unopposed Motion, and included in support the following documents:

- Declaration of Robert J. Wasserman, ("Wasserman Decl.," Dkt. No. 81-2); and
- Declaration of Atticus Administration, LLC ("Atticus Administration Decl.," Dkt. No. 81-3).

## II. THE SETTLEMENT AGREEMENT

The parties have been in settlement negotiations since December 2018. (Motion at 4.) The Settlement defines the settlement class ("Class") as follows:

(i)   [T]he Nationwide Settlement Class, i.e., all current and former hourly, non-exempt non-California employees of Skechers who received commissions, non-discretionary bonuses and/or other items of compensation and worked overtime during the Nationwide Settlement Class Period.

(ii)  The California Settlement Class, i.e., all current and former hourly, non-exempt employees of Skechers who received commissions, non-discretionary bonuses and/or other items

of compensation and worked overtime during the California Settlement Class Period.

(Settlement ¶ H; Motion at 6.)  The Class Period for both classes is September 10, 2014 through May 1, 2020.  (Id.)

## A.  Settlement Summary

Below is an overview of the financial terms of the Settlement:

- Gross settlement amount:                               $800,000.00
- Attorneys' fees and costs:                             $240,000.00
                                                         $20,000.00
- Total service award for class representatives:         $12,000.00
- Administration costs:                                  $32,000.00
- LWDA payment:                                          $18,750.00

(Motion at 6; Settlement ¶¶ C – E, J, K, P.)

## B.  Financial Terms

### 1.  Settlement Class Members

The Class consists of 4,758 Class Members.  (Motion at 20.)  No one has opted-out of the class.  (Id.)  Class Members are not required to complete a claim form.  (Id. at 6.)  Each Participating Class Member is entitled to a share of the Net Settlement Amount.  (Id.)

### 2.  Payment and Distribution of Funds

Individual Settlement Payments will be calculated by determining a payment ratio for each Class Member: the number of pay periods worked by each Participating Class Member divided by the number pay periods worked by all Participating California or Nationwide Class Members as appropriate.  (Id.)  Each Participating Class Member's payment ratio is then multiplied by the portion of the Net Settlement Amount allocated to the California Class or Nationwide Class.  (Id.)  Participating Class Members whose employment with Skechers ended during the applicable period shall also receive an equal share of $70,000 set aside for them. (Motion at 6-7; Settlement at 15.)

The Settlement Administrator will calculate the Participating Class Members' shares, prepare and mail settlement checks, and respond to Class Member inquiries/disputes as appropriate.  (Motion at 20; Settlement ¶¶ D, V, IX).

The gross settlement amount is non-reversionary.  (Settlement at 20.)  Any checks that remain uncashed 180 days after the date of mailing will be canceled, and the funds will be

transmitted to the California State Controller's Office, Unclaimed Property Division, in the class member's name.  (Id.)

### 3.  Class Representatives

The Settlement provides for Enhancement Payments of $6,000.00 to the Class Representatives Eileen Wilk and Dorian Gomez for their participation in the litigation.  (Motion at 15; Settlement ¶ IV.)

### 4.  Settlement Administration Costs

The Court previously appointed Atticus Administration, LLC as the Settlement Administrator.  ("Preliminary Approval Order," Dkt. No. 78, at 12).  The Settlement Administrator will be paid approximately $32,000.00 for notice and claim administration.  (Motion at 20-21; Settlement ¶ V.)  Costs are to be paid out of the settlement common fund.  (Id.)

### 5.  Attorneys' Fees and Costs

The Settlement provides that Class Counsel may apply for attorneys' fees that amount to $240,000 and costs of $20,000.  (Motion at 9; Settlement ¶ III.)

## C.  Injunctive Relief

The Settlement does not appear to include any injunctive relief.

## D.  Release

Under the Settlement, Participating Class Members who do not request exclusion agree to release Defendant and the Released Parties under the following terms:

> For Participating California Class Members, the Released Claims include all claims asserted in the Action and any and all claims, rights, demands, liabilities and causes of action of any nature or description arising during the Class Period from the facts and claims alleged and/or asserted in the Action, or that could have been alleged in the Action based on the facts and claims alleged in the Complaint, as amended.  The Released Claims include all claims for failure to properly calculate and pay overtime compensation, double-time compensation, and interest thereon; the calculation of the regular rate of pay; unfair business practices based on the foregoing; civil and statutory penalties based on the foregoing; waiting-time penalties; payment for vested vacation; liquidated damages; and attorneys' fees and costs.  The Released Claims

include all such claims arising under: the California Labor Code, including, but not limited to, sections 201, 202, 218.5, 227.3, 510, 1194, 1194.2, 1198, 1199, 2698 et seq. and 2699 et seq..; al claims relating to the Released Claims under the Wage Orders of the California Industrial Welfare Commission, the California Private Attorneys General Act of 2004 ("PAGA"), California Business and Professions Code section 17200 et seq., the California Civil Code; and California Code of Civil Procedure § 1021.5. This release excludes the release of claims not permitted by law.

In addition to those Nationwide Class Members who already submitted an opt-in consent form, California Class Members and Nationwide Class Members who timely cash or otherwise negotiate their Settle Payment Check will be deemed to have opted into the Action for the purposes of the FLSA, and, as to those Class Members, the Released Claims include any and all claims of the Class Members may have under FLSA, to include but not limited to 29 USC sections 201, et seq., and 29 CFR sections 778, et seq., for failure to properly calculate and pay overtime arising during the Class Period from the facts and claims alleged and/or asserted in the Action, or that could have been alleged in the Action based on the facts and claims alleged in the Complaint, as amended. Only those Nationwide Class Members who previously submitted an opt-in consent form and those Participating (California and Nationwide) Class Members who timely cash or otherwise negotiate their Settlement Payment Check will be deemed to have opted into the Action for the purposes of the FLSA. Upon entry of Judgment, California Class Members are precluded from filing a wage and hour action under FLSA against the Released Parties for claims and/or causes of action encompassed by the Released Claims which are extinguished and precluded pursuant to the holding in Rangel v. PLS Check Cashers of California, Inc., 899 F.3d 1106 (2018). This release excludes the release of claims not permitted by law.

(Settlement ¶ Z.)

The Settlement provides the following for Plaintiffs' Release:

As of the Effective Date, it is understood and agreed that Plaintiffs, on behalf of themselves, the Labor and Workforce Development Agency, and the other aggrieved employees of the State of California, release Defendant and Released Parties from any and all claims for the alleged violations of the Private Attorneys' General Act ("PAGA"), California Labor Code sections 2698 et seq. and

2699 et seq., based upon the allegations in the operative Complaint, as amended, and/or Gomez's letter to the LWDA, or that could have been alleged based upon the facts asserted in the operative Complaint, as amended, and/or Gomez's letter to the LWDA, including failure to properly calculate and pay overtime compensation, double-time compensation, waiting-time penalties, payment for vested vacation, and attorneys' fees and costs.  The Release PAGA Claims include all such claims arising under the California Labor Code, including, but not limited to, sections 201, 202, 203, 218.5, 227.3, 510, 1194, 1194.2, 1198, 1199, which arose between October 3, 2018 and May 1, 2020.

(Id. ¶ AA.)

## E. CAFA Notice

Defendant timely served a CAFA notice package on November 5, 2021.  (MFA at 4.)

## F. Notice

The Settlement Administrator distributed the Class Notice to Class Members via first class mail and performed address traces to re-mail any notices that were returned as undeliverable.  (Motion at 16.)  The Settlement Administrator and Class Counsel also uploaded pertinent documents to the Court's website, established a toll-free number and website, and answered Class Members' questions.  (Id.)  Eighty of the 4,758 Notices remained undeliverable due to the inability to identify a current address. (Id.)  No Class Members requested to opt-out and no Class Member objected to the settlement. (Id. at 20.)

## G. Administration

Atticus Administration, LLC, serves as the Settlement Administrator.  (Atticus Administration Decl. ¶ 3.)  Settlement administration duties include: (1) receiving and updating through normal and customary procedures the Class List produced by Defendant; (2) populating, printing, and mailing the Class Notice; (3) responding to Class Member inquires as appropriate; (4) performing necessary additional skip traces on any notices and/or checks returned as undeliverable; (5) tracking exclusions and calculating the Settlement Shares of Participating Class Members; (6) resolving disputes during the administration process; (7) preparing and mailing settlement checks to the Participating Class Members; (8) preparing and distributing Court-approved payments to itself, the LWDA, Class Representatives, and Class Counsel; (9) preparing all appropriate tax forms required in connection with the payments called for by this Settlement and remitting those forms and all required payments to the appropriate governmental agencies; (10) providing notice of the settlement in accordance with CAFA; (11) preparing a report summarizing the administration of the settlement; and (12) generally performing all normal and customary duties associated with the administration of the settlement.  (Id.)

### III.  LEGAL STANDARD

**A.  Class Action Settlement**

Class action settlements must be approved by the Court.  See Fed. R. Civ. P. 23(e).
Whether to approve a class action settlement is "committed to the sound discretion of the trial
judge."  Class Plaintiffs v. Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992).  A strong judicial policy
favors settlement of class actions.  Id.  Nevertheless, the Court must examine the settlement as a
whole for overall fairness.  Cheng Jiangchen v. Rentech, Inc., 2019 WL 5173771, at *5 (C.D. Cal.
Oct. 10, 2019) (citing Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998)).  Neither
district courts nor appellate courts have the power to delete, modify, or substitute provisions in
the negotiated settlement agreement.  Hanlon, 150 F.3d at 1026.  "The settlement must stand or
fall in its entirety."  Id.

In order to approve a class action settlement, the Court must conduct a three-step
inquiry.  See Adoma v. Univ. of Phoenix, Inc., 913 F. Supp. 2d 964, 972 (E.D. Cal. 2012).  First, it
assesses whether the parties have met notice requirements under the Class Action Fairness Act.
Id.  Next, it determines whether the notice requirements of Federal Rule of Civil Procedure
23(c)(2)(B) have been satisfied.  Id.  Finally, the Court must find that the proposed settlement is
fair, reasonable, and adequate under Rule 23(e)(2).  Id.

**B.  Attorneys' Fees**

"In a certified class action, the court may award reasonable attorney's fees and
nontaxable costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).
The Court has discretion in a common fund case to choose either (1) the lodestar method or (2)
the percentage-of-the-fund in the calculation of reasonable attorneys' fees.  Vizcaino v. Microsoft
Corp., 290 F.3d 1043, 1047 (9th Cir. 2002).  Whether to use one method over the other is in the
court's discretion, however, the use of the percentage method in common fund cases appears to
be dominant.  Id.

Under the percentage-of-recovery method, twenty-five percent of a common fund is the
benchmark for attorneys' fees awards.  In re Bluetooth, 654 F.3d 935, 942 (9th Cir. 2011)
("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award,
providing adequate explanation in the record of any 'special circumstances' justifying a
departure.)  Under the lodestar method, a "a lodestar figure is calculated by multiplying the
number of hours the prevailing party reasonably expended on the litigation (as supported by
adequate documentation) by a reasonable hourly rate for the region and for the experience of the
lawyer."  Id. at 941 (citing Stanton v. Boeing Co., 327 F.3d 938, 965 (9th Cir. 2003)).  Whether
the court awards the benchmark amount or some other rate, the award must be supported "by
findings that take into account all of the circumstances of the case."  Vizcaino, 290 F.3d at 1048.
To guard against an unreasonable result, the Ninth Circuit has encouraged district courts to
cross-check any calculations done in one method against those of another method.  Id. at 1050-51.

## IV.  DISCUSSION

### A.  Class Action Settlement Final Approval

Defendant provided the CAFA Notice pursuant to 28 U.S.C. § 1715.  (MFA at 4.)

#### 1.  Rule 23(c) Notice Requirements

Class actions brought under Rule 23(b)(3) must satisfy the notice provisions of Rule 23(c)(2) and, upon settlement of a class action, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1).  Rule 23(c)(2) requires that "the best notice that is practicable under the circumstances, including individual notice" of particular information.  See Fed. R. Civ. P. 23 (c)(2)(B).

The Court previously approved the form of the proposed class notice.  (Preliminary Approval Order at 12.)  As discussed above, the Settlement Administrator implemented the notice procedure.  (See Atticus Administration Decl.)  Based on Atticus Administration's Declaration, the Court finds that the class notice and notice procedure fairly and adequately informed the Class Members of the nature of the action, the terms of the proposed settlement, the effect of the action and release of claims, the Class Members right to exclude themselves from settlement, and their right to object to the proposed settlement.

#### 2.  Whether the Class Settlement is Fair, Adequate, and Reasonable

##### a.  The Strength of Plaintiffs' Case, and Risk, Expense, Complexity, and Duration of Further Litigation

In evaluating the strength of the case, the court should assess "objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach [a settlement]."  Adoma v. Univ. of Phoenix, Inc., 913 F. Supp. 2d 964, 975 (internal quotation marks omitted).  "In assessing the risk, expense, complexity, and likely duration of further litigation, the court evaluates the time and cost required."  (Id. at 976.)

Under the circumstances, the Court finds it significant that the class members will receive "immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation."  Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 526 (C.D. Cal. 2004) (internal quotation marks omitted).  The Court finds that this factor supports a finding that the settlement is fair, adequate, and reasonable.

##### b.  The Risk of Maintaining Class Action Status Through Trial

In its order granting preliminary approval, the Court certified the class pursuant to Rule 23(b)(3).  (See Preliminary Approval Order.)  The Court determined that the requirements of Rule 23 have been met in determination of whether to certify the class for settlement purposes.

(See id.); Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems[.]").  Nothing has been put forth to challenge or otherwise undermine the court's previous order certifying the class for settlement purposes under Rule 23(e). See In re Apollo Grp. Inc. Sec. Litig., 2012 WL 1378677, *4 (D. Ariz. 2012) ("The Court has previously certified, pursuant to Rule 23 of the Federal Rules of Civil Procedure, and hereby reconfirms its order certifying a class.").  This factor weighs in favor of approving the settlement.

### c.   The Amount Offered in Settlement

The Court previously found this factor supports approval.  (See Preliminary Approval Order.)  Nothing has changed since that time.  The average payment to each Participating California Class Member will be $225.13, and to each Participating Nationwide Class Member will be $18.34.  (Motion at 18.)

### d.   The Extent of Discovery Completed and the Stage of Proceedings

On September 10, 2018, Plaintiff Wilk filed the action after investigation of her claims.  (Motion at 2.)  After the initial motion practice, the parties engaged in informal discovery to understand their respective positions.  (Id. at 3.)  During that period, Class Counsel: (1) obtained and reviewed Plaintiffs' personnel files, payroll records, and time records; (2) researched Defendant Skechers, its organization, the number and locations of its stores; (3) identified, researched, and pled the appropriate claims; (4) exhausted administrative remedies; (5) identified, requested, secured, and reviewed pertinent policies, practices, and procedures; (6) identified, requested, and secured the payroll records of an agreed upon sampling of the putative class members; (7) retained an expert to analyze the data and supervising its calculations; (8) reviewed the expert's findings; 9) separately calculated the damages of a sampling of class members to confirm the accuracy of the expert's findings; (10) created a reliable damages model; and (11) developed and implemented a strategy for mediation and settlement.  (Id.)

The Court previously determined that this factor weighed in favor of approval.  (See Preliminary Approval Order.)  It remains so.

### e.   The Experience and Views of Counsel

The Court has previously determined that Class Counsel's substantial experience supported approval.  (Id.)  The factor remains unchanged.

### f.   The Reaction of Class Members to the Proposed Settlement

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."  Nat'l Rural Telecoms., 221 F.R.D. at 529.  No Class

---

Members requested to opt-out and no Class Member objected to the settlement.  (Motion at 20.)
The lack of objections or requests for exclusion support approval of the settlement.  See, e.g.,
Franco v. Ruiz Food Prods., Inc., 2012 WL 5941801, at *14 (E.D. Cal. 2012) (factor weighed in
favor of approval when two out of 2,055 class members opted out with no objections to the
settlement).

## B.  Attorneys' Fees

The Settlement provides that Class Counsel may apply for attorneys' fees that amount to
$240,000 and costs of $20,000.  (Motion at 9; Settlement ¶ III.)  The attorneys' fee award is 30%
of the gross settlement, which exceeds the 25% benchmark in percentage of the recovery awards.
See In re Bluetooth, 654 F.3d 935, 942 (9th Cir. 2011) ("[C]ourts typically calculate 25% of the
fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record
of any 'special circumstances' justifying a departure.)  However, due to various factors, the
Court finds this award amount appropriate.

Nearly four years have passed since Plaintiffs filed this action.  As previously discussed,
the risks of continued litigation were significant.  (Preliminary Approval Order at 9-10; see
Vizcaino, 290 F.3d at 1048 (risk of dismissal or loss on class certification is relevant to evaluation
of a requested fee).  Class Counsel submitted documents which demonstrate that they have
worked over 400 hours on this matter and spent $283,557.40 in pursuit of this matter through the
resolution stage, which exceeds their attorneys' fee request.  (Wasserman MFA Decl. ¶¶ 60-62.)
Finally, Class Counsel took this case on a contingent basis.  (Id. ¶¶ 56-57.)  The Court finds no
issue that would require further inquiry to determine whether a percentage below 30% would be a
more appropriate award to counsel.  Consideration of the foregoing factors supports Class
Counsel's request for attorney's fees in the amount of 30% of the settlement fund, or $240,000,
and costs not to exceed $20,000.  The court is satisfied that a lodestar "cross-check" is not
required.  See Craft v. City of San Bernardino, 624 F. Supp. 2d 1113, 1122 (C.D. Cal. 2008) ("A
lodestar cross-check is not required in this circuit, and in some cases is not a useful reference
point.")

The Court previously preliminarily approved an incentive award of $6,000 to Class
Representatives Eileen Wilk and Dorian Gomez, to total $12,000.  (See Preliminary Approval.)
Given that there have been no developments to change the Court's decision on this matter, the
Court finds that this award is remains appropriate.

## V.    CONCLUSION

The Court determines that:

1.  Plaintiffs' Motion for Final Approval of Class Action Settlement (Dkt. No. 81) is
    GRANTED.

2.  The Court GRANTS final approval to the parties' Settlement Agreement.  The Court finds that the Settlement Agreement is fair, adequate, and reasonable, appears to be the product of arm's-length and informed negotiations, and treats all members of the class fairly.  The parties shall perform their obligations pursuant to the terms of this Settlement Agreement and this Order.

3.  Plaintiffs' Motion for Attorneys' Fees and Costs (Dkt. No. 79) is GRANTED.

4.  The following classes are certified under Federal Rule of Civil Procedure 23(c) for settlement purposes:

    The Nationwide Settlement Class, i.e., all current and former hourly, non-exempt non-California employees of Skechers who received commissions, non-discretionary bonuses and/or other items of compensation and worked overtime during September 10, 2014 through May 1, 2020.

    The California Settlement Class, i.e., all current and former hourly, non-exempt employees of Skechers who received commissions, non-discretionary bonuses and/or other items of compensation and worked overtime during September 10, 2014 through May 1, 2020.

5.  The form, manner, and content of the Class Notice meet the requirements of Federal Rules of Civil Procedure 23(c)(2).

6.  Plaintiff Eileen Wilk will be paid a service award of $6,000 in accordance with the terms of the Settlement Agreement and this Order.

7.  Plaintiff Dorian Gomez will be paid a service award of $6,000 in accordance with the terms of the Settlement Agreement and this Order.

8.  Class counsel shall be paid $260,000 in attorneys' fees and costs in accordance with the terms of the Settlement Agreement.

9.  The Settlement Administrator, Atticus Administration, LLC, shall be paid for its litigation costs of $32,000 in accordance with the terms of the Settlement Agreement.

10. All class members who did not validly and timely request exclusion from the Settlement have released their claims, as set forth in the Settlement Agreement, against any of the released parties (as defined in the Settlement Agreement).

11. Except as to any class members who have validly and timely requested exclusion, this action is DISMISSED WITH PREJUDICE, with all parties to bear their own fees and costs except as set forth herein and in the prior orders of this Court.

12. Without affecting the finality of this Order, the Court retains jurisdiction over the parties, including Class Members, for the purposes of construing, enforcing, and administering the Order and Judgment, as well as the Settlement Agreement itself.

13. Judgment shall be entered accordingly.

**IT IS SO ORDERED.**